Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000417
19-JUN-2017
08:36 AM

NO. CAAP-16-0000417

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DUANE KAAPEA KAAIALII, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-1713)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, and Reifurth and Chan, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Duane Kaapea Kaaialii (Kaaialii) and Jade Rose Lam (Lam) with two counts of second-degree theft, in violation of Hawaii Revised Statutes (HRS) § 708-831(1)(b) (2014).[1] The charges were based on allegations that Kaaialii and Lam shoplifted cosmetic products from two different ABC Stores. A jury found Kaaialii guilty as charged on both counts. The

---

[1] At the time relevant to this case, HRS § 708-831(1)(b) provided:

(1) A person commits the offense of theft in the second degree if the person commits theft:

. . .

(b) Of property or services the value of which exceeds $300[.]

Circuit Court of the First Circuit (Circuit Court)²/ sentenced Kaaialii to concurrent terms of four years of probation subject to the special condition that he serve one year of imprisonment. The Circuit Court entered its Judgment on May 18, 2016.

On appeal, Kaaialii contends that: (1) there was insufficient evidence to support his convictions; (2) the Circuit Court committed plain error in responding to a question from the jury; and (3) the Circuit Court erred in denying his request for a new trial.  We affirm.

I.

A.

The State adduced the following evidence a trial.  On June 10, 2015, Catherine Wall (Wall), a sales associate at ABC Stores (Store 37), stocked Maybelline merchandise, including items of Maybelline Magnum Waterproof Mascara multi-pack (Magnum multi-pack), in the cosmetics department until the shelves were full.  Each Magnum multi-pack was priced at $39.99.  On June 12, 2015, Wall noticed that the shelves she had fully stocked were missing a lot of Magnum multi-packs as well as another product. Wall notified Chase Weber (Weber), ABC Store 37's assistant manager, of her observation.  Weber, in turn, viewed the store's surveillance video recording for June 11, 2015, and focused on a period where he observed Maybelline products being taken from the shelf.

At trial, the State introduced the surveillance video and a series of photographs taken from the surveillance video. Weber testified that the photographs showed the "perpetrator" and the "accomplice" entering the store; the perpetrator and accomplice standing next to the display from which the items were missing; the perpetrator repeatedly taking items from the display and placing them in an ABC shopping bag held by the accomplice; and the perpetrator and accomplice leaving the store.

---

²/ The Honorable Dexter D. Del Rosario presided.

Weber testified that he watched the surveillance video of the June 11, 2015, incident in the afternoon on June 12, 2015. Later in the evening on June 12, 2015, Weber recognized the "perpetrator" re-entering the store. Weber recognized this person as the perpetrator because he was wearing "the same boonie hat" and because of the person's similarity in body size and lower jaw facial structure as the perpetrator in the surveillance video. In addition, the person Weber identified as the perpetrator re-entered the store with the "accomplice" from the surveillance video, who was wearing "pretty much the exact same clothes" as she was wearing the previous day. Weber walked up to the perpetrator and engaged him in conversation, in order to stall him until the police arrived. However, the perpetrator left before the police appeared.

At trial, Weber identified Kaaialii as the "perpetrator" in the June 11, 2015, surveillance video and the person he encountered in the store the following day. Weber also testified that in September 2015, he was shown a six-person photographic lineup by the police, and he selected photograph number 3 as the person he recognized from the surveillance video and their in-person encounter. At trial, Weber identified Kaaialii as the person he had selected in photograph number 3. The State introduced the six photographs shown to Weber by the police as Exhibits 11D thorough 11I. The third photograph in that series of exhibits, Exhibit 11F, is apparently a photograph of Kaaialii. However, at trial, the State did not elicit specific testimony that photograph number 3 selected by Weber was Exhibit 11F. Weber testified that based on the store's inventory and sales records for June 7 through 14, 2015, 25 Magnum multi-packs, valued at $999.75, were unaccounted for and missing.

B.

Mary Fe Myla V. Castro (Castro), a cashier/stocker for ABC Stores (Store 31), testified that on August 6, 2015, she fuly stocked the cosmetics section with twelve Magnum multi-packs. On August 7, 2015, Marivic Mabuti (Mabuti), an assistant manager for

3

ABC Store 31, was notified that items from the cosmetics section were missing. Mabuti reviewed the store's surveillance video recording for August 7, 2015. The State introduced the surveillance video and photographs taken from the surveillance video. Mabuti testified that the photographs show a "male" and "female" entering the store; the male and female in the Maybelline section; the male putting Maybelline merchandise into the female's bag; Mabuti crossing paths with the male; and the male and female leaving the store. Mabuti stated that when she crossed paths with the male as shown in the surveillance video, she almost bumped into him, at which point she was able to look at his face.

In September 2015, the police showed Mabuti a six-person photographic lineup. Mabuti picked a photograph, which she signed, of the person she almost bumped into on August 7, 2015. Mabuti stated that she was able to identify this person because she "looked at his face when I almost bump into him." Mabuti identified Kaaialii at trial as the person she almost bumped into and the person depicted in the photograph she selected from the photographic lineup. The six photographs shown to Mabuti by the police were admitted in evidence as Exhibits 17D thorough 17I. Exhibit 17E, the second photograph in the series, contains a signature that appears to be that of Mabuti's name. Detective Elizabeth Merrill, who showed the photographic lineup to Mabuti, testified that Mabuti picked photograph number 2, which Detective Merrill stated was a photograph of Kaaialii. Detective Merrill also testified that Mabuti's signature appears on photograph 2.

Mabuti stated that inventory and sales records for August 6-7, 2015, show that 12 Magnum multi-packs valued at $479.88 were missing.

II.

During its deliberations, the jury submitted Jury Communication No. 3, which asked: "Is the photo of state's exhibit 11F, and state['】s exhibit 17e the defendant Duane Kaapea

4

Kaaialii?" Without objection from Kaaialii, the Circuit Court answered the jury's question as follows: "It is the jury's duty to determine the facts in this case. Please refer to the Court's instructions." A short time after the Circuit Court provided this response, the jury informed the Circuit Court that it had reached a verdict.

### III.

We resolve the issues raised by Kaaialii on appeal as follows:

### A.

Kaaialii argues that there was insufficient evidence to support his conviction on Count 1 because "there was no evidence that the photograph which Weber identified as the perpetrator was the Defendant" and because "Weber never identified Defendant as the perpetrator, but merely as the person in Exhibit 11F."[3] We disagree.

At trial, Weber made an in-court identification of Kaaialii as the "perpetrator" he had seen taking merchandise and putting it into a bag held by an accomplice. Weber identified Kaaialii as the perpetrator based on Weber's review of the June 11, 2015, surveillance video and Weber's in-person encounter with Kaaialii on June 12, 2015. The State introduced the June 11, 2015, surveillance video, photographs taken from the surveillance video, and photographs from the six-person photographic lineup the police had shown to Weber, from which Weber had selected photograph 3 as the person he recognized from the surveillance video and their in-person encounter. When viewed in the light most favorable to the State, see State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992), we conclude that there was sufficient evidence to support Kaaialii's conviction on Count 1.

---

[3] Weber's testimony only related to the theft charged in Count 1 of merchandise from ABC Stores (Store 37). Kaaialii does not raise any argument as to the sufficiency of the evidence for Count 2, which charged the theft of merchandise from ABC Stores (Store 31).

B.

Kaaialii argues that the Circuit Court committed plain error in responding to Jury Communication No. 3. Kaaialii contends that the Circuit Court erred because it should have *sua sponte* included in its answer to the jury's question a reminder that "each juror must determine the facts for him/herself and that guilt must be established beyond a reasonable doubt." We disagree.

In responding the jury's question, the Circuit Court advised the jury that "[i]t is the jury's duty to determine the facts in this case." This is a correct statement of the law. In its answer, the Circuit Court also directed the jury to refer to the Circuit Court's instructions. Kaaialii does not contend that the Circuit Court's jury instructions failed to properly advise the jury on the standards the jury was required to apply in evaluating the evidence or determining whether Kaaialii was guilty or not guilty. Kaaialii cites no authority to support his claim that the Circuit Court's answer was deficient because it failed to include a reminder that "each juror must determine the facts for him/herself and that guilt must be established beyond a reasonable doubt." We conclude that the Circuit Court did not err in responding to the jury's question.

C.

Kaaialii claims that in light of the Circuit Court's erroneous reply to the jury's question, the Circuit Court abused its discretion in denying his motion for a new trial. Kaaialii's claim is without merit. As we have concluded, the Circuit Court's reply to the jury's question was not erroneous, and therefore, the Circuit Court's reply does not provide a basis for a new trial. Furthermore, we reject as without merit Kaaialii's contention that the jury's return of guilty verdicts, after the jury's question and the Circuit Court's response, shows that the jury failed to follow the instruction that the verdict must be unanimous.

6

IV.

We affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawai'i, June 19, 2017.

On the briefs:

Walter R. Schoettle
for Defendant-Appellant

Jonathan K.D. Tungpalan
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

7